UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A.A., BY AND THROUGH HIS PARENTS
AND NEXT FRIENDS, E.A. AND M.A.,

      Plaintiffs,

v.

WALLED LAKE CONSOLIDATED
SCHOOLS,

      Defendant.

File No. 2:16-CV-14214

Hon. Sean F. Cox
District Judge

Hon. Mona K. Majzoub
Magistrate Judge

MICHIGAN PROTECTION AND
ADVOCACY SERVICE, INC.
Bradley J. Dembs (P76692)
Crystal M. Grant (P71488)
Attorneys for Plaintiffs
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
(517) 487-1755
bdembs@mpas.org
cgrant@mpas.org

GILBERT RUSSELL MCWHERTER
SCOTT & BOBBITT, PLC
Justin S. Gilbert (TN Bar No. 017079)
Attorney for Plaintiffs
100 W. Martin Luther King Blvd., Suite 504
Chattanooga, TN 37402
(423) 499-3044
jgilbert@gilbertfirm.com
*Admission Pending*

LUSK & ALBERTSON, PLC
Robert A. Lusk (P38122)
Attorney for Defendant
409 E. Jefferson, Fifth Floor
Detroit, MI 48226
(248) 988-5662
rlusk@luskalbertson.com

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

INTRODUCTION.................................................................................................1

PROCEDURAL HISTORY...............................................................................1

ARGUMENT ....................................................................................................4

    I.     STANDARD OF REVIEW......................................................4

    II.    PLAINTIFF'S COMPLAINT IS NOT MOOT .......................5

          A.    PLAINTIFFS' CLAIMS ARE CAPABLE OF REPETITION, YET EVADING REVIEW ...........................................................5

          B.    PLAINTIFFS' REVOCATION IS BASED SOLELY UPON THE ALJ'S LEGALLY ERRONEOUS STAY-PUT RULING...10

          C.    THIS COURT CAN PROVIDE RELIEF.....................................12

    III.   SECTION 504 AND THE ADA PROTECT THE STUDENT..............14

CONCLUSION AND REQUEST FOR RELIEF.........................................16

CERTIFICATE OF SERVICE .................................................................18

# INDEX OF AUTHORITIES

## Cases

*Alief Independent School District*
109 LRP 72818 (SEA 2009) ...................................................................13

*Andrew M. v. Del. Cty. Office of Mental Health & Mental Retardation*
490 F.3d 337 (3d Cir. 2007)...................................................................16

*Arlington Cen. Sch. Dist. v. L.P.*
421 F. Supp. 2d 692 (S.D.N.Y. 2006).......................................................11

*B.H. v. Portage Pub. Sch. Bd. of Educ.*
No. 1:08-CV-293, 2009 WL 277051 (W.D. Mich. Feb. 2009) ................................14

*Daniel R.R. v. State Bd. of Educ.*
874 F.2d 1036 (5th Cir. 1989)................................................................5, 6

*Fialka-Feldman v. Oakland Univ. Bd. of Trustees*
639 F.3d 711 (6th Cir. 2011)....................................................................13

*Garden Grove Unified Sch. Dist.*
116 LRP 23533 (SEA 2016) ......................................................................7

*G.M. Eng'rs and Assoc., Inc. v. W. Bloomfield Twp.*
922 F.2d 328 (6th Cir. 1990)......................................................................4

*Honig v. Doe*
484 U.S. 305 (1988) ..............................................................................5, 9

*Hooker v. Dall, Indep. Sch. Dist.*
2011 U.S. Dist. LEXIS 45760 (N.D. Tex. Mar. 31, 2011)........................................8

*Hudson ex re l. Hudson v. Bloomfield Hills Pub. Sch.*
108 F.3d 112 (6th Cir. 1997).......................................................................6

*J.D. v. Kanawha Cty. Bd. of Educ.*
No. 2:09-CV-00139, 2009 WL 4730804 (S.D.W. Va. Dec. 4, 2009) ........................7

*Jones v. Honda of Am. Mfg., Inc.*
   No. 3:13-CV-167, 2015 WL 1036382 (S.D. Ohio Mar. 9, 2015)..............................15

*Joshua A. v. Rocklin Unified Sch. Dist.*
   559 F.3d 1036 (9th Cir. 2009)...................................................................................11

*Kari H. ex rel. Dan H. v. Franklin Special Sch. Dist.*
   125 F.3d 855 (6th Cir. 1997) ....................................................................................10

*Kimble v. Douglas Cnty. Sch. Dist. RE-1*
   925 F. Supp. 2d 1176 (D. Colo. Feb. 25, 2013).......................................................14

*L.H. v. Hamilton Cty. Dep't of Educ.*
   No. 1:14-CV-00126, 2015 WL 1926226 (E.D. Tenn. Apr. 27, 2015) ...............14, 15

*Lee ex rel. MacMillan v Biloxi Sch. Dist.*
   963 F.2d 837 (5th Cir. 1992)..............................................................................6, 7, 9

*M.R. v. Ridley Sch. Dist.*
   744 F.3d 112 (3d Cir. 2014).......................................................................................11

*Murphy v. Hunt*
   455 U.S. 478 (1982) .....................................................................................................8

*Sacramento City Unified Sch. Dist, Bd. of Educ. v Rachel H. ex rel. Holland*
   14 F.3d 1398 (9th Cir. 1994)........................................................................................6

*Tate v. Sam's E., Inc.*
   3:11-CV-87, 2013 WL 1320634 (E.D. Tenn. Mar. 29 2013) ...................................15

*Thomas v. Cincinnati Bd. of Educ.*
   918 F.2d 618 (6th Cir. 1990)......................................................................................11

*Velzen v. Grand Valley State Univ.*
   902 F.Supp.2d 1038 (W.D. Mich. 2012) .....................................................................4

iii

**Statutes**

20 U.S.C. § 1412(a)(1)(A) ........................................................................14
20 U.S.C. § 1412(a)(11) ...........................................................................2
20 U.S.C. § 1415(i)(2) .............................................................................10
20 U.S.C. § 1415(j) .................................................................................10
29 U.S.C. § 706(8)(B) .............................................................................14
29 U.S.C. §§ 794 *et seq.* ........................................................................4
42 U.S.C. §§ 12181 *et seq.* ....................................................................4

**Regulations**

34 C.F.R. § 104.34(a) .........................................................................15, 16
34 C.F.R. § 300.9(c)(2) ...........................................................................8

**Rules**

Fed. R. Civ. P. 12(b)(1) ...........................................................................4
Fed. R. Civ. P. 12(b)(6) ...........................................................................4
Michigan Admin. Code R. 340.1853(4) .....................................................2

## INTRODUCTION

This case involves a young boy with Down syndrome and Speech Apraxia and a dispute about whether he is entitled to special education and related services that would enable him to be educated in the general education classroom at his home school, Keith Elementary ("Keith"). Plaintiffs are aggrieved by the Decision and Order that was reached through a due process hearing, not only because it was adverse to Plaintiffs' position, but also due to the manner in which the Administrative Law Judge ("ALJ") made her decision. As explained, *infra*, Plaintiffs' Complaint is not moot and there is a present controversy that must be addressed by this Court.

## PROCEDURAL HISTORY

It is important for the Court to understand the procedural history of this matter as it relates to A.A.'s right to stay-put placement in the general education classroom and the Parents' decision to revoke consent for IDEA services, made as a direct result of the ALJ's improper Decision and Order.

On May 13, 2015, the District held a meeting to address A.A.'s placement and services for the 2015-2016 school year and determined that he should be placed in a segregated, self-contained classroom for students with cognitive impairments ("CI classroom"). The Parents disagreed with this decision and in response, the District offered them a "trial placement agreement" through which

A.A. would be placed in a general education classroom at Keith with IDEA services.[1]

The Parents entered into this contract and A.A. began school in the general education kindergarten classroom at Keith at the start of the 2015-2016 school year. After approximately eight weeks, the District unilaterally determined that A.A. would be moved to the CI classroom, over the Parents' objections. However, due to various circumstances, A.A. never left his placement in general education.

On February 4, 2016, Plaintiffs filed a state administrative complaint with the Michigan Department of Education ("MDE") to resolve their dispute with Defendant regarding A.A.'s educational placement. By this time, A.A. had been in the general education classroom for over half of the school year.

On February 11, 2016, pursuant to its authority under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1412(a)(11), and the Michigan Administrative Rules for Special Education ("MARSE"), Mich. Admin. Code R. 340.1853(4), the MDE ordered that A.A. should remain in the general education classroom at Keith, his then-current educational placement, during the pendency of the state complaint investigation. (Exhibit A).

---

[1] As a result of the Parents' state administrative complaint on this issue, the MDE found that the District's "trial placement agreement" "violates the purposes of the IDEA and is not enforceable." (Exhibit B).

On April 1, 2016, in response to Plaintiffs' state administrative complaint and the resulting MDE investigation, Defendant filed for a due process hearing on the same issues. Although A.A. had been in the general education classroom for the entire academic year, on April 18, 2016, Defendant filed a Motion to Establish Stay-Put in the CI classroom. The ALJ issued a new stay-put order, affirming that A.A. should remain in the general education classroom at Keith, as that was the only placement he had experienced up to that point. (Exhibit C).

On September 2, 2016, after a due process hearing, the ALJ issued a Decision and Order determining that A.A. should be educated in the segregated CI classroom. Critically, the ALJ also erroneously *changed* A.A.'s stay-put placement to the CI classroom "during any further proceedings in this matter." (Exhibit D, p. 53).

The Parents immediately responded by revoking consent for IDEA services, with the purpose of preserving the proper stay-put placement by preventing the District from moving A.A. to the CI classroom during an appeal of the ALJ's invalid ruling. (Exhibit E). Instead of "mooting" the present case, this shows Plaintiff's active response to protect A.A. against a ruling that is in clear violation of the IDEA's stay-put mandate, which will naturally take time to correct through these proceedings.

3

## **ARGUMENT**

### I.  **Standard of Review**

Defendant argues that this Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because Plaintiffs revoked consent for special education and related services under the IDEA before filing this action, rendering it moot. However, whether the actions of any of the parties prior to the filing of this suit made this action moot is necessarily a question intertwined with the merits of Plaintiffs' claims and therefore must only be discussed under Fed. R. Civ. P. 12(b)(6). *See Velzen v. Grand Valley State Univ.*, 902 F.Supp.2d 1038, 1042 (W.D. Mich, 2012).

In reviewing a 12(b)(6) motion, the Court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs and Assoc., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990). As demonstrated below, relief can be granted in this case because there is extensive jurisprudence manifesting that Plaintiffs' IDEA claims are not moot and the Student is also protected under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §§ 794 *et seq.*, and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181 *et seq.* As such, Defendant's Motion must fail.

4

## II.     Plaintiffs' Complaint is not Moot

### A.     Plaintiffs' Claims are Capable of Repetition, Yet Evading Review

Defendant asserts that the Parents' revocation of consent for special education services leaves this Court without the ability to grant any relief and thus renders this case moot. This argument lacks merit and is unsupported by the significant amount of precedent on this issue.

It is well-established that "[a] case may circumvent the mootness doctrine if the conduct about which the plaintiff originally complained is 'capable of repetition, yet evading review.'" *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1040 (5th Cir. 1989) (*quoting Honig v. Doe*, 484 U.S. 305, 318 (1988)). In *Daniel R.R.*, the parents challenged a school district's decision to place their six-year-old son with Down syndrome and a speech impairment exclusively in a special education classroom. During the pendency of the case, the parents withdrew the student from the school district and enrolled him in a private school. The Court held that this action did not render the case moot "[b]ecause there is a reasonable expectation that the conduct giving rise to this suit will recur every school year, yet evade review during the nine-month academic term." *Id.* at 1040-41.

The logic of *Daniel R.R.* and *Honig* has consistently been followed by other Circuit and District Courts, including the Sixth Circuit, in finding live controversies where students have moved to private schools or other school

districts and when parents have revoked consent for special education and related services.

In *Hudson ex rel. Hudson v. Bloomfield Hills Pub. Sch.*, 108 F.3d 112 (6th Cir. 1997), a dispute arose over a student's placement when the parent believed that the student could be educated satisfactorily in her neighborhood school but the school district pushed for a more restrictive setting. Despite the student not being enrolled in the school district at the time the case was heard, the Sixth Circuit rejected the school district's mootness argument because the student "remains eligible for and interested in enrollment in the school district." *Id.* at 113. Citing *Daniel R.R.*, the Court held that "given the nature of the pedagogical and legal disagreements which underlie this case, we are satisfied that the present controversy is not moot because it is likely both to be repeated and to evade review." *Id. See also Sacramento City Unified Sch. Dist., Bd. of Educ. v. Rachel H. ex rel. Holland*, 14 F.3d 1398, 1402-03 (9th Cir. 1994).

In *Lee ex rel. MacMillan v. Biloxi Sch. Dist.*, 963 F.2d 837 (5th Cir. 1992), a mother sent her daughter to live with her father in another school district after receiving an adverse due process decision "and simultaneously sought judicial relief from decisions she believed to be illegal and, more importantly, detrimental to her child's well being and educational best interests." *Id.* at 839. Despite the removal of the student from the school district, the Fifth Circuit found that the case

6

was capable of repetition, yet evading review, reasoning that "[t]he record reflects a reasonable expectation that [the student] would . . . re-enroll in the [defendant school district] were she assured that the [defendant school district] would provide the needed special education." *Id.*

*J.D. v. Kanawha Cty. Bd. of Educ.*, No. 2:09-CV-00139, 2009 WL 4730804 (S.D.W. Va. Dec. 4, 2009) presents yet another example. There, the plaintiff student had been removed from the defendant school district for over two years and his father refused to state whether he would ever return. The court held that since the father did not unequivocally state that he would not return the student to the school district, and because the student was eligible to return if he so wished, the case was capable of repetition yet evading review. *Id.* at *11. The court also acknowledged the student's young age, as an elementary school student, in making its decision. *Id.*

In *Garden Grove Unified Sch. Dist.*, 116 LRP 23533 (SEA 2016), a case relied upon by Defendant, the ALJ found that the parents' claim that the student's IEP was not appropriate was not rendered moot by their revocation of consent during the due process hearing. All of the above cases effectively involved a revocation of consent for the provision of special education and related services to a student by his or her school district, either explicitly or by disenrolling the student from the district.

Here, as in many of the above-cited cases, the conduct at issue is the District's refusal to "mainstream" A.A. by placing him in a general education classroom with the special education supports he needs to be successful in that setting. Akin to a parent's decision to remove their child from his or her school district, Plaintiffs' revocation of consent can be withdrawn at any time[2], thus rendering the current dispute over least restrictive environment "capable of repetition, yet evading review."[3]

As the Supreme Court explained in *Murphy v. Hunt*, 455 U.S. 478, 482 (1982), in order to meet the capable of repetition prong, "there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." Plaintiffs easily meet either condition. A.A. is only seven years old and is currently in kindergarten. He is just beginning his educational career and inclusion in the general education setting is

---

[2] *See* U.S. Department of Education, Office of Special Education Programs Guidance, p. 4 ("After revoking consent for his or her child, a parent always maintains the right to subsequently request an initial evaluation to determine if the child is a child with a disability who needs special education and related services.") (Exhibit F).

[3] The Parents' revocation of consent for special education and related services is also not retroactive to the dispute at bar. It does not negate any action that occurred after consent was originally given, and before consent was revoked. *See* 34 C.F.R. § 300.9(c)(2); *Hooker v. Dall. Indep. Sch. Dist.*, 2011 U.S. Dist. LEXIS 45760, at *18-*20 (N.D. Tex. Mar. 31, 2011)(citing regulation and finding revocation is not retroactive). As such, Plaintiffs are free to litigate the District's placement decision, as well as the ALJ's Decision and Order, both of which occurred prior to the revocation of consent.

integral to his development as a human being and a member of society. Also, A.A. continues to be enrolled in the District and the Parents have affirmed that they want A.A. to receive IDEA services. (Exhibit E). They are willing to rescind their revocation of consent or request new evaluations as long as doing so will not result in A.A. being placed in a segregated setting. *Id.*

This is not an unreasonable approach to take, despite Defendant's attempt to characterize it as such. In *Lee ex rel. MacMillan*, discussed *supra*, for example, the Fifth Circuit found that there was a reasonable expectation that the parent would reenroll her daughter with the defendant school district, *were she assured* that the necessary special education would be provided. 963 F.2d at 839. "[The mother]'s refusal to sacrifice critical years of her daughter's development pending time-consuming review proceedings does not render her case moot." *Id.* Similarly here, Plaintiffs' decision to take action to ensure that they are not sacrificing A.A.'s development by placing him in a segregated setting does not cause this case to be moot.

Furthermore, in *Honig*, the Supreme Court considered the complaining party's history of advocacy for his right to an appropriate public education in determining whether the controversy at issue was capable of repetition. 484 U.S. at 329 n. 6. Here, as in *Honig*, it would be unreasonable to assume that Plaintiffs would forgo the exercise of a right that they have sought unwaveringly to defend

9

since May 2015, when the present issue first arose. Therefore, it can reasonably be expected that Plaintiffs will pursue IDEA services for A.A. moving forward. Since the District has steadfastly refused to place A.A. in the general education setting with appropriate supports and services, the same controversy over A.A.'s placement is thus likely to recur.

### B. Plaintiffs' Revocation is Based Solely Upon the ALJ's Legally Erroneous Stay-Put Ruling

"Stay-put," or "pendency placement," are terms of art in education law. The IDEA provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . ." 20 U.S.C. § 1415(j). Such proceedings include a civil action in a District Court of the United States, brought by a party aggrieved by a decision made in a due process hearing. 20 U.S.C. § 1415(i)(2); *Kari H. ex rel. Dan H. v. Franklin Special Sch. Dist.*, 125 F.3d 855 at *6 (6th Cir. 1997). As such, pursuant to the IDEA, stay-put extends throughout the pendency of a case, from due process through an appeal of an adverse decision in District Court.

As a parental safeguard, the IDEA does not provide any authority for an ALJ to change an already established stay-put placement, after a due process hearing, in anticipation of a further appeal. This is understandable, as the purpose of stay-put is to protect the student by maintaining the status quo while a case is pending. *See*

10

*Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 625 (6th Cir. 1990) ("the term ['stay-put'] connotes preservation of the status quo"); *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 125 (3d Cir. 2014) ("stay-put provision is designed to ensure educational stability for children with disabilities until the dispute over their placement is resolved"); *Joshua A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1040 (9th Cir. 2009) ("[T]he stay put provision acts as a powerful protective measure to prevent disruption of the child's education throughout the dispute process").

Altering stay-put at such an advanced stage of the proceedings would force the student to change placements, thereby defeating the reason stay-put was implemented in the first place. Yet this is precisely what the ALJ ordered in the case at bar. Not only did the ALJ improperly change A.A.'s placement, but she ordered him to be moved to the more restrictive, segregated CI classroom, a placement that he had never attended.

Under the IDEA, the stay-put, or pendency placement, is the last agreed upon placement at the moment due process proceedings commence. *Arlington Cen. Sch. Dist. v. L.P.*, 421 F. Supp. 2d 692, 697 (S.D.N.Y. 2006). When a dispute arises before a new IEP has been implemented, the "current educational placement" will be the operative placement under which the child is *actually receiving instruction* at the time the dispute arises. *Thomas*, 918 F.2d at 625

11

(emphasis added). Here, the general education classroom at Keith was A.A.'s operative placement at the time the District filed its due process complaint, as it was the only setting in which A.A. received instruction during the 2015-2016 school year. Under the IDEA's stay-put mandate, this must remain A.A.'s placement throughout the pendency of the current proceedings. The ALJ's post-hearing Decision and Order changing A.A.'s stay-put placement was legally erroneous and invalid.

The Parents have made clear in their affidavit that the sole reason they revoked consent for IDEA services was in response to the ALJ's legally erroneous decision to change A.A.'s stay-put placement during the pendency of the proceedings. (Exhibit E). The affidavit further declares that the Parents will withdraw their revocation if the legally correct stay-put placement is implemented by the District or ordered by this Court. *Id.* This assertion by the Parents clearly renders this action capable of repetition, yet evading review. *See* Section II.A, *supra*. Plaintiffs have amended their Complaint to assert a claim regarding the ALJ's invalid stay-put decision and intend to file a motion in the near future to compel A.A.'s return to his IDEA-mandated stay-put placement in the general education classroom at Keith.

## C.   This Court Can Provide Relief

As this case is not moot, it follows that this Court can hear the case and provide relief pursuant to Plaintiffs' Complaint. As such, this case is distinguishable from the cases cited by Defendant. In *Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 713 (6th Cir. 2011), the Sixth Circuit dismissed the case only after finding that it would be "impossible for the Court to grant any effectual relief whatever." This was so because the plaintiff had completed his education program and left the school with no intention to return and thus, would not be subject to the same action again. *Id.* at 714. Similarly, in *Alief Independent School District,* 109 LRP 72818 (SEA 2009), there was no indication that the parent intended to ever again pursue special education and related services for the student. Here, by contrast, A.A. remains enrolled in the District and continues to have disabilities that necessitate support via special education and related services. The Parents have attested to the fact that they desire for A.A. to receive special education, and only revoked consent to ensure that he would not be segregated. (Exhibit E). Further, if the ALJ had not incorrectly changed A.A.'s stay-put placement, there would have been no need for the Parents to revoke their consent in the first place.

In addition, Plaintiffs have amended their Complaint to include injuries suffered as a result of the District's violations of Section 504 and the ADA, and

these injuries can be redressed by the requested relief, regardless of A.A.'s current or future status under the IDEA.

## III.   Section 504 and the ADA Protect the Student

Even if Plaintiffs did not want future services under IDEA—which, as discussed *supra*, is not the case—A.A. is still protected against discrimination under Section 504 and Title II of the ADA. "[P]arental revocation of consent for special education and related services under the IDEA does not eliminate the broader protection of Section 504 and the ADA." *Kimble v. Douglas Cnty. Sch. Dist. RE-1*, 925 F. Supp. 2d 1176, 1184 (D. Colo. Feb. 25, 2013). This is so because a "student's right to be free from discrimination under those statutes exists without regard to her eligibility, or her parents' consent for, services under the IDEA." *Id.* (citing 29 U.S.C. § 706(8)(B); 20 U.S.C. § 1412(a)(1)(A)).

After passage of the ADA Amendments Act ("ADAAA") in 2009, children who are covered by the IDEA are also covered by Section 504 and the ADA because they are broader and more far reaching statutes. *See B.H. v. Portage Pub. Sch. Bd. of Educ.*, No. 1:08-CV-293, 2009 WL 277051, at *6 (W.D. Mich. Feb. 2, 2009) (504 and ADA are the larger "universe"); and *L.H. v. Hamilton Cty. Dep't of*

*Educ.*, No. 1:14-CV-00126, 2015 WL 1926226, at *2–3 (E.D. Tenn. Apr. 27, 2015) (explaining how IDEA does not subsume Section 504 or the ADA).[4]

Graphically, then, A.A. is "dually covered" because, as an IDEA student, he is also a Section 504 and ADA student:



Just like the IDEA has a least restrictive environment provision, so too does Section 504:

> A recipient to which this subpart applies shall educate, or shall provide for the education of, each qualified handicapped person in its jurisdiction **with persons who are not handicapped to the maximum extent appropriate to meet the needs of the handicapped person.** A recipient shall place a handicapped person in the regular educational environment operated by the recipient unless it is demonstrated by the recipient that the education of the person in the regular environment with the use of supplementary aids and services cannot be achieved satisfactorily. Whenever a recipient places a person in a setting other than the regular educational environment pursuant

---

[4] Reliance on pre-ADAAA case law (which had a much narrower focus) is not applicable and pre-ADAAA case law lacks precedential value. *See Tate v. Sam's E., Inc.*, No. 3:11-CV-87, 2013 WL 1320634, at *10-11, n. 6 (E.D. Tenn. Mar. 29, 2013); *Jones v. Honda of Am. Mfg., Inc.*, No. 3:13-CV-167, 2015 WL 1036382 (S.D. Ohio Mar. 9, 2015) (citing the ADA expansions and rejecting prior case law on the "disability" prong).

to this paragraph, it shall take into account the proximity of the alternate setting to the person's home.

34 C.F.R. § 104.34(a) (emphasis added).

Due to these similarities, "it is clear why violations of Part B of the IDEA are almost always violations of [Section 504] . . . When a state fails to provide a disabled child with a free and appropriate education, it violates the IDEA. However, it also violates [Section 504] because it is denying a disabled child a guaranteed education merely because of the child's disability." *Andrew M. v. Del. Cty. Office of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007).

Plaintiffs have exhausted the "least restrictive environment" issue under the IDEA and, therefore, they may pursue their rights under Section 504 and Title II of the ADA. Plaintiffs have amended their Complaint to assert claims under Section 504 and Title II of the ADA. These claims are not moot nor subject to dismissal.

## CONCLUSION AND REQUEST FOR RELIEF

Plaintiffs' Complaint is not moot, as evidenced by the extensive jurisprudence cited herein and Plaintiffs' ongoing interest in and desire for A.A. to receive IDEA services from Defendant. Plaintiffs have also amended their Complaint, raising Section 504 and ADA claims which are not rendered moot by Plaintiffs' present revocation of IDEA services. For these reasons, Defendant's motion should be DENIED.

Dated: January 12, 2017

*/s/ Bradley J. Dembs*
Bradley J. Dembs (P76692)
Crystal M. Grant (P71488)
Michigan Protection and Advocacy
Service, Inc.
Attorneys for Plaintiffs
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
(517) 487-1755
bdembs@mpas.org
cgrant@mpas.org

Dated: January 12, 2017

*/s/ Justin S. Gilbert*
Justin S. Gilbert (TN Bar No. 017079)
Gilbert Russell McWherter Scott &
Bobbitt, PLC
Attorney for Plaintiffs
100 W. Martin Luther King Blvd., Suite 504
Chattanooga, TN 37402
(423) 499-3044
jgilbert@gilbertfirm.com
*Admission Pending*

17

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2017, I electronically filed the above-document with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

/s/ Bradley J. Dembs
Bradley J. Dembs (P76692)
Crystal M. Grant (P71488)
Michigan Protection and Advocacy
Service, Inc.
Attorneys for Plaintiffs
4095 Legacy Parkway, Suite 500
Lansing, MI 48911
(517) 487-1755
bdembs@mpas.org
cgrant@mpas.org