UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A.A., by and through his Parents
and Next Friends, E.A. and M.A.,

    Plaintiffs,

v.                                          Civil Action No. 16-14214

Walled Lake Consolidated Schools,      Sean F. Cox
                                                          United States District Court Judge
    Defendant.
_____/

**OPINION & ORDER
DENYING DEFENDANT'S MOTION TO DISMISS**

        Plaintiffs are a young child with Down syndrome and his parents. After having litigated a dispute over the proper placement of the child in the Defendant school district before an administrative law judge, Plaintiffs filed this action under the Individuals with Disabilities Education Act, 20 U.S.C. § 1401 *et seq*. The child's parents want him mainstreamed in a general education classroom, while the District believes that he should be placed in a classroom with cognitively-impaired students. Plaintiffs also bring related claims under Title II of the ADA and Section 504 of the Rehabilitation Act. In the pending motion, the Defendant District asks the Court to: 1) dismiss the case as moot, because the child's parents withdrew consent for him to receive special education services by the District; and 2) dismiss Plaintiffs' claims under Title II and Section 504 for failure to exhaust administrative remedies, pursuant to 20 U.S.C. § 1415(l) of the IDEA.

        For the reasons set forth below, the Court shall DENY the motion. The dispute between

the Parents and the District (whether and to what extent the Student can be mainstreamed in a general education classroom) is not moot because the dispute is one that is capable of repetition, yet evading review. In addition, the District's assertion that Plaintiffs' claims under Title II and Section 504 should be dismissed for failure to exhaust, under § 1415(l), lacks merit based upon the language of the statute and recent Supreme Court precedent.

## BACKGROUND

Plaintiff A.A. ("the Student"), by and through his Parents and Next Friends, E.A. and M.A. ("the Parents") (collectively "Plaintiffs") filed this action against Defendant Walled Lake Consolidated Schools (the "District") on December 1, 2016. Plaintiffs' original Complaint included the following introduction:

> Plaintiff A.A. ("the Student"), by and through his parents and next friends, E.A. and M.A. ("the Parents") (the Student and the Parents, collectively "Plaintiffs"), brings this civil action against Defendant Walled Lake Consolidated Schools ("the District"), following receipt of an adverse administrative decision on a due process complaint filed by the District under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*. Plaintiffs contend that the District denied the Student a free appropriate public education ("FAPE") in the least restrictive environment ("LRE"), as mandated by the IDEA, 20 U.S.C. § 1412(a)(5), and the federal regulations promulgated pursuant to the IDEA, 34 C.F.R. §§ 300.114, 300.116. Plaintiffs further contend that the conclusion of the Administrative Law Judge ("ALJ") that Plaintiffs did not establish such violations of the IDEA was based upon erroneous factual findings and improper legal conclusions unsupported by the evidence or established law. Finally, Plaintiffs assert that the ALJ committed reversible error by placing the burden of proof on Plaintiffs when Defendant filed the due process complaint against the Student and the Parents.

(Compl., D.E. No. 1 at Pg ID 1-2). Thus, Plaintiffs' filed this suit under the IDEA and their original Complaint asked this Court to reverse an administrative decision in the District's favor.

On December 22, 2016, Defendant filed a Motion to Dismiss or for Summary Judgment

(D.E. No. 5), wherein they assert that "Plaintiffs' Complaint is moot because – after the administrative decision in the District's favor – Plaintiffs revoked permission for the District to provide their son with IDEA services." (D.E. No. 5 at Pg ID 38).

On January 12, 2017, in response to the motion, Plaintiffs took the unusual step of both: 1) filing a response opposing the motion that sought to dismiss their original complaint (D.E. No. 6); and 2) filing an Amended Complaint (D.E. No. 7), apparently in order to assert additional claims under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.

Plaintiffs' First Amended Complaint now contains the following introduction section, which describes the claims asserted by Plaintiffs:

> 1. Plaintiff A.A. ("the Student"), by and through his parents and next friends, E.A. and M.A. ("the Parents") (the Student and the Parents, collectively "Plaintiffs"), brings this civil action against Defendant Walled Lake Consolidated Schools ("the District"), following receipt of an adverse administrative decision on a due process complaint filed by the District under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*. Plaintiffs contend that the District denied the Student a free appropriate public education ("FAPE") in the least restrictive environment ("LRE"), as mandated by the IDEA, 20 U.S.C. § 1412(a)(5), and the federal regulations promulgated pursuant to the IDEA, 34 C.F.R. §§ 300.114, 300.116. Plaintiffs also assert that the District violated the Student's rights under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §§ 794 *et seq*.
>
> 2. Plaintiffs contend that the conclusion of the Administrative Law Judge ("ALJ") that Plaintiffs did not establish such violations of the IDEA was based upon erroneous factual findings and improper legal conclusions unsupported by the evidence or established law. Plaintiffs also assert that the ALJ committed reversible error under the IDEA by placing the burden of proof on Plaintiffs when Defendant filed the due process complaint against Plaintiffs and by changing the Student's stay-put placement during the pendency of the proceedings.

(D.E. No. 7 at Pg ID 250-51). Plaintiffs' First Amended Complaint seeks the following relief in

this action:

> WHEREFORE, Plaintiffs respectfully request that this Court:
>
> A. Issue a declaratory Judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that the ALJ erroneously placed the burden of proof on Plaintiffs,
>
> B. Issue a declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202 that Defendant denied A.A. necessary supports and services, including behavioral supports;
>
> C. Issue a declaratory Judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that Defendant's May 2015 and May 2016 IEPs failed to provide A.A. with a FAPE in the least restrictive environment;
>
> D. Issue a declaratory Judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that Defendant's attempts to place A.A. in a segregated, self-contained classroom were unjustified and unlawful under Title II of the ADA and Section 504;
>
> E. Issue a preliminary injunction[1] ordering Defendant to return A.A. to his pre-hearing stay-put placement in the general education classroom at his home school, Keith Elementary, during the pendency of these proceedings;
>
> F. Issue a permanent injunction ordering Defendant to place A.A. in the least restrictive environment, which is the general education classroom at his home school, Keith Elementary;
>
> G. Vacate the September 2, 2016 Decision and Order of the ALJ;
>
> H. Order Defendant to pay Plaintiffs' reasonable attorneys' fees and costs for this action; and
>
> I. Order any other and further relief, both legal and equitable, that this Court may deem just and proper.

First Am. Compl. at Pg ID 279-80).

It appears that, because those claims had not been asserted when the District filed its

---

[1] Plaintiffs have not filed a motion seeking a preliminary injunction.

motion, the District's Reply Brief included challenges to the newly-asserted claims.

Perhaps recognizing that this Court does not generally entertain arguments that are raised for the first time in a reply brief (because doing so does not afford the non-movant an opportunity to respond), the District then filed a "Supplemental Motion to Dismiss or for Summary Judgment" on January 26, 2017 that appears to formally raise the arguments made in the reply brief. (D.E. No. 9).

Having considered the pending motions and how they developed, this Court then issued an order wherein it ordered that Plaintiffs could file "a response brief of no more than 10 pages to Defendant's Supplemental Motion to Dismiss or for Summary Judgment no later than February 15, 2016" and that Defendant could **"file a reply brief of no more than 2 pages later than February 22, 2016."** (D.E. No. 10).

Thereafter, Plaintiff filed its supplemental response on February 12, 2017 (D.E. No. 12) and the District filed its supplemental reply on February 20, 2017. (D.E. No. 13).

The Court heard oral argument on June 8, 2017.

**ANALYSIS**

**I.     Overview Of The IDEA**

The Individuals with Disabilities Education Act, 20 U.S.C. § 1401 *et seq*. ("IDEA") "offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education' – more commonly known as a FAPE – to all children with certain physical or intellectual disabilities." *Fry v. Napoleon Cmty. Sch.*, 137 S.Ct. 743, 748, 197 L. Ed. 2d 46 (Feb. 22, 2017). An eligible child, such as the Student in this case, "acquires a 'substantive right' to such an education once a State accepts the IDEA's financial assistance." *Id.* at 749.

5

"Under the IDEA, an 'individualized education program,' called an IEP for short, serves as the 'primary vehicle' for providing each child with the promised FAPE." *Id*. "Crafted by a child's 'IEP Team' – a group of school officials, teachers, and parents – the IEP spells out a personalized plan to meet all of the child's 'educational needs.'" *Id*. "Because parents and school representatives sometimes cannot agree on such issues, the IDEA establishes formal procedures for resolving disputes" as explained by the Supreme Court:

> To begin, a dissatisfied parent may file a complaint as to any matter concerning the provision of a FAPE with the local or state educational agency (as state law provides). *See* §1415(b)(6). That pleading generally triggers a "[p]reliminary meeting" involving the contending parties, § 1415(f)(1)(B)(i); at their option, the parties may instead (or also) pursue a full-fledged mediation process, see § 1415(e). Assuming their impasse continues, the matter proceeds to a "due process hearing" before an impartial hearing officer. § 1415(f)(1)(A); *see* §1415(f)(3)(A)(ii). Any decision of the officer granting substantive relief must be "based on a determination of whether the child received a [FAPE]." §1415(f)(3)(E)(ii). If the hearing is initially conducted at the local level, the ruling is appealable to the state agency. *See* § 1415(g). Finally, a parent unhappy with the outcome of the administrative process may seek judicial review by filing a civil action in state or federal court. *See* § 1415(i)(2)(A).

*Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 749, 197 L. Ed. 2d 46 (2017).

This case involves such a dispute between the Student's Parents and the District. The Parents filed this action after losing at the administrative hearing.

There does not appear to be any dispute that Plaintiffs have exhausted their administrative remedies under the IDEA. But in the pending motion, the District asserts that this Court should dismiss this action as moot because, after the District prevailed in the administrative hearing, the Parents removed consent for the Student to received special education services in the District. The District also asserts that Plaintiff's ADA and Section 504 claims should be dismissed for

failure to exhaust.

## II. Standard Of Decision

A mootness challenge is properly addressed as a challenge to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

Challenges to subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) come in two varieties: 1) a facial attack, which challenges jurisdiction based on the pleadings alone; or 2) a factual attack, which challenges the factual basis for jurisdiction. *Wayside Church v. Van Buren County,* 847 F.3d 812, 816 (6th Cir. 2017).

Here, the challenge to jurisdiction is a factual attack, because it is based upon events that occurred outside of the pleadings (i.e., the Parents having revoked consent).

With such a factual attack, the district court weighs any conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist. *Id.* Thus, the Court may consider and assess evidence outside the pleadings.

## III. The Relevant Facts

Plaintiffs live within the District's geographical boundaries. The Student is a child with Down syndrome and Speech Apraxia.

In May of 2015, the District addressed the Student's placement and services for the 2015-2016 school year. The District's May 2015 IEP placed the Student in a classroom for cognitively impaired students at the District's Meadowbrook Elementary School (a "CI Classroom"). The Student's Parents disagreed with that IEP and wanted the Student to be placed in a general education classroom at the District's Keith Elementary School (ie., the Parents want him

"mainstreamed"[2]).

Although a copy of it is not in the record submitted by the parties, the District and the Parents then entered into some kind of "trial placement agreement," under which the Student would be placed in a general education classroom at Keith.

The Student then began the 2015-2016 school year in the general education classroom at Keith. Sometime later, however, the District determined that the Student should be moved to the CI Classroom, despite the Parents' objections.

While the Student was still attending Keith, his Parents filed a state administrative complaint with the Michigan Department of Education, alleging that the District circumvented the IEP placement process by proposing a trial placement agreement, and proposing an arbitration agreement, instead of convening an IEP team meeting. By the time that complaint had been filed, the Student had been attending Keith for more than half of the school year, and was still there.

In a letter dated February 11, 2016, the Michigan Department of Education confirmed that it had received Plaintiffs' complaint against the District. That letter stated:

> The OSE has determined that the district must return the student to the educational status, program placement, and services as they existed at Keith Elementary School during the "trial placement" until the conclusion of the investigation of this state complaint. In the judgment of the department, not doing so would constitute a violation of the student's due process protections.

(D.E. No. 6-2 at Pg ID 158-59).

As to the complaint filed by the Parents, the State of Michigan ultimately concluded that

---

[2]"Mainstreaming" refers to placing a child with special needs into a classroom with their peers who have no disabilities. *Honig v. Doe*, 484 U.S. 305, 311 (1988).

8

the District's use of a trial placement agreement, under the circumstances it was used, was not in compliance with the IDEA and the District was directed to discontinue the practice. (*See* D.E. No. 6-3). But that did not resolve the dispute over where the Student would be placed.

On April 1, 2016, after the Parents had filed their complaint, the District filed for a due process hearing, to resolve the dispute over the Student's placement. The District's due process complaint was forwarded to the Michigan Administrative Hearing System for hearing and was assigned to Administrative Law Judge Kandra Robbins.

On April 18, 2016 – at or near the end of the school year – the District filed a motion with the ALJ asking her to issue an order that would require the Student to "stay put" in the CI Classroom at Meadow Elementary. In an order issued on May 13, 2016, the ALJ concluded that the "Stay-Put placement for Student should be the May 13, 2015 IEP," that had placed him in the CI Classroom at Meadowbrook. (D.E. No. 6-4 at Pg ID 176). But she did not order that, stating:

> However, in light of the fact that Student has never been in the Mod. CI classroom called for in the May 13, 2015 IEP and with only 23 school days remaining, Student's Stay-Put placement for the remainder of the 2015-2016 school year shall remain as set by OSE until further order of this Tribunal.

(*Id*.).

On September 2, 2016, the ALJ issued her "Decision And Order" (D.E. No. 5-2) wherein she concluded in the District's favor that the Student should be educated in the CI Classroom at Meadowbrook. Her actual conclusions of law were:

1. Respondents [the Parents] did not establish, by a preponderance of the evidence, that the May 2015 IEP denied Student a free and appropriate public education in the least restrictive environment.

2. Respondents [the Parents] did not establish, by a preponderance of the evidence, that the May 2016 IEP as amended in July 2016 denied Student

> a free and appropriate public education in the least restrictive environment.
>
> 3. I find by a preponderance of the evidence that Student did not receive a free appropriate public education during the 2015/2016 school year [(in the general education class at Keith Elementary)].
>
> 4. Student's stay-put placement is the placement in the May 2016 IEP as amended in July 2016 [(in the CI class at Meadowbrook)].

(D.E. No. 6-5 at Pg ID 232).

The ALJ also ruled that the "Student's stay-put placement during any further proceedings in this matter is the CI classroom as called for in the May 2016 IEP as amended in July 2016." (*Id.* at Pg ID 231). That means that during any appeal of the ALJ's ruling, the Student would change schools and attend Meadowbrook to receive special education services.

On September 2, 2016, the Student's Parents signed a "Revocation of Parental Consent for Special Education Programs and Services" form wherein they formally revoked consent for the provision of special education programs and services for the Student at the District. (D.E. No. 5-3). That form signed by the Parents stated, in pertinent part:

> I hereby revoke (take back) my consent for the provision of special education programs and services for my child.
> . . . .
>
> • I understand that once I revoke consent for my child's special education programs and services:
> • My parental rights in special education will end.
> • My child will no longer receive the discipline protections available under the IDEA.
> • The school district is not required to make a free appropriate public education available to my child.

(*Id.*). The form also states, however, that:

> • I understand that after I revoke consent for my child, I may subsequently refer my child for special education and request an initial evaluation to determine if my

child is a child with a disability who needs special education programs or services.

(*Id*.).

Following the ALJ's decision, the Parents also filed this action. Under the IDEA, 20 U.S.C. § 1415(i)(2)(A), the Parents have the right to appeal the ALJ's decision in either state or federal court. They exercised that right when they filed this action. Among other things, Plaintiffs seek "a declaratory Judgment, pursuant to 28 U.S.C. §§ 2201 and 2202, that Defendant's May 2015 and May 2016 IEPs failed to provide A.A. with a FAPE in the least restrictive environment" and an award of attorney fees under the IDEA.

In response to the pending motion, one of the Student's Parents submitted an Affidavit that states, in pertinent part, that the Parents revoked consent for the Student to received special education services as a "temporary fix" to the Student having to attend a new school while these proceedings continued.

On May 30, 2017, the District filed a "Supplement to Defendant's Dispositive Motions" (D.E. No. 15) that states that the District was recently informed that the Parents enrolled the Student in a private parochial school for the 2017-2018 school year.

On June 2, 2017, the Student's mother submitted an Affidavit that states that she has not yet decided where the Student will attend school for the upcoming 2017-18 school year. (D.E. No. 17-1).

**IV.     Is Plaintiffs' Cause Of Action Under The IDEA Moot Because, After The Administrative Decision In The District's Favor, Plaintiffs Revoked Permission For The District To Provide The Student With Special Education Services?**

"Article III of the Constitution grants the Judicial Branch the authority to adjudicate 'Cases' and 'Controversies'" *In re City of Detroit, Michigan*, 841 F.3d 684, 690-91 (6th Cir.

2016) (citations omitted). "Court have 'no business deciding legal disputes or expounding on law' without them." *Id*.

"A federal court has no authority to render a decision upon moot questions or to declare rules of law that cannot affect the matter at issue." *Cleveland Branch N.A.A.C.P. v. City of Parma, Ohio*, 263 F.3d 513, 530 (6th Cir. 2001). A case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome. *Id*. Thus, when events occur that deprive the court of the ability to provide any meaningful relief, then the case is moot and must be dismissed. *Ailor v. City of Maynardville, Tennessee*, 368 F.3d 587,596 (6th Cir. 2004).

Where "one of the several issues presented becomes moot, the remaining live issues supply the constitutional requirement of a case or controversy." *Powell v. McComack*, 395 U.S. 486, 496 (1969). Moreover, it is well established that a court "may grant declaratory relief even though it chooses not to issue an injunction." *Id*. at 498-99.

When considering the potential mootness of a claim for declaratory relief, "[t]he question is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of declaratory judgment." *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974).

"The heavy burden of demonstrating mootness rests on the party claiming mootness." *Cleveland Branch N.A.A.C.P. v. City of Parma, Ohio*, 263 F.3d 513, 524 (6th Cir. 2001); *KNC Investments, LLC v. Lane's End Stallions, Inc*., 581 F. App'x 484, 487 (6th Cir. 2014).

The Court concludes that the District has not met its heavy of burden of showing that this

action is moot.

In its motion, the District argues that "[o]nly equitable remedies are available under the IDEA." (D.E. No. 5 at Pg ID). The District argues that, because the Parents have revoked consent for the Student to received special education services, this Court cannot compel the District to provide the Student with a FAPE. In other words, the District takes the position that even if this Court were to agree with the parents that the placement in the CI Classroom was improper, this Court could not issue an injunction requiring the District to provide special education services to the Student at Keith because the Parents have revoked their consent for special education services. The District's motion asserts that "[t]he Parents, by their own actions, have left this Court without the ability to grant any effective relief. Therefore this case is moot." (*Id.* at Pg ID 48).

Requests for declaratory relief "often require courts to face the difficult task of distinguishing 'between actual controversies and attempts to obtain advisory opinions on the basis of hypothetical controversies." *Coalition for Govt. Procurement v. Federal Prison Industries, Inc*. 365 F.3d 435, 458 (6th Cir. 2004). When considering the potential mootness of a claim for declaratory relief, "[t]he question is whether the facts alleged, *under all the circumstances*, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of declaratory judgment." *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974).

Moreover, "[a] case may circumvent the mootness doctrine if the conduct about which the plaintiff originally complained is 'capable of repetition, yet evading review.'" *Daniel R.R. v. State Board of Educ.*, 874 F.2d 1036, 1040 (5th Cir. 1989) (citations omitted). That exception

applies where: 1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration; and 2) there is a reasonable expectation that the same complaining party would be subject to the same action again. *McPherson v. Michigan High Sch. Ath. Ass'n*, 119 F.3d 453, 458 (6th Cir. 1997).

That doctrine has been applied in a number of cases with facts analogous to the facts presented here. *See, eg.*, *Honig v. Doe*, 484 U.S. 305 (1988) (finding that claim of student still eligible for special education services was not moot because it was capable of repetition yet evading review); *Daniel R.R. v. State Board of Educ.*, 874 F.2d 1036, 1039-41 (5th Cir. 1989) (concluding controversy over mainstreaming of child was not moot, even though child was not currently attending the school, where it was capable of repetition yet evading review); *Sacramento City Unified Sch. Dist. v. Rachel*, 14 F.3d 1398 (9th Cir. 1994 (same); *Hudson v. Bloomfield Hills Public Sch.*, 108 F.3d 112, 113 (6th Cir. 1997) (following *Daniel* and finding case was not moot where the student "remains eligible for and interested in enrollment in the school district."); *Lee v. Biloxi Sch. Dist.*, 963 F.2d 837 (5th Cir. 1992) (finding dispute over IEP was not moot where parents removed child from the school while seeking review of contested placement); *J.D. v. Kanawha Cnty. Bd. of Educ.*, 2009 WL 4730804 (S.D. West Virginia 2009) (finding that even though student was no longer attending public school, the dispute over appropriateness of IEP was not moot because controversy was capable of repetition yet evading review).

In *Daniel R.R.*, the parents of a six-year old boy with Down syndrome and a speech impairment (Daniel) wished to have their son mainstreamed, while the school district believed that the boy needed to be placed in a classroom devoted to special education. The parents sought

review of the placement. After the district prevailed at the administrative level, the parents sought review in federal district court. "Two years passed while the case wound its way through the course of administrative and judicial review procedures." *Id*. at 1040. During those two years, some circumstances changed – including that the child was no longer enrolled in the school system because the parents had chosen to send the child to a private school. That development caused the United States Court of Appeals for the Fifth Circuit to consider, *sua sponte*, whether the case had been rendered moot.

The Fifth Circuit concluded that the case was not moot because there was a reasonable expectation that the conduct giving rise to the action would recur, yet evade review during the academic term. The court noted that the conduct about which the child's parents complained was the school's refusal to mainstream the child. Given the parties' opposing views on the issue of whether the child could be mainstreamed, the court noted that "whether and to what extent to mainstream Daniel will be an issue every time" the school prepares a new placement for him or proposes changing an existing one. *Id*. at 1041. The court concluded that controversy, the extent of the school's mainstreaming obligation for the child, "is reasonably likely to recur as Daniel develops and as [the school] prepares placements and IEP's for each new school year." *Id*. Although the child was no longer attending public school, the court noted that he "remains a citizen of the State of Texas and, thus, remains entitled to a free appropriate public education in the state." Given the child's "continued eligibility for public educational services under the EHA, the mainstreaming controversy remains capable of repetition." *Id*. The court further concluded that the controversy would evade review:

This recurring controversy will evade review during the effective period of each

15

> IEP. A placement and an IEP cover an academic year, a nine month period. The Supreme Court has observed that administrative and judicial review of an IEP is "ponderous" and usually will not be complete until a year after the IEP has expired. *School Committee of the Town of Burlington v. Department of Education of the Commonwealth of Massachusetts*, 471 U.S. 359, 370, 105 S.Ct. 1996, 2002, 85 L.Ed.2d 385, 395 (1985); *see Rowley*, 458 U.S. at 186 n.9, 102 S.Ct. at 3041 n.9, 73 L.Ed.2d at 699 n.9 (noting that judicial and administrative review of an IEP "invariably" takes more than nine months.). In *Rowley,* the Court held that the controversy was capable of repetition yet evading review even though the IEP should have expired two years before the case reached the court. *Rowley,* 458 U.S. at 186 n.9, 102 S.Ct. at 3041 n.9, 73 L.Ed.2d at 699 n.9. Here, Daniel exhausted his state administrative remedies and, then, filed suit in the district court. The ponderous administrative and judicial review did, as the Court predicted, outlive Daniel's placement and IEP, allowing them to evade review. As the case presents a live controversy, we turn to the merits of Daniel's appeal.

*Id.* at 1041.

Here too, the controversy between the Parents and the District is whether and to what extent the Student can be mainstreamed. Until that controversy is resolved, it will remain an issue every time the District prepares an IEP for the Student or proposes to change an existing one. And given the length of time it takes for administrative and judicial review of the dispute, this recurring controversy will evade review during the effective period of each IEP for the Student.

Moreover, the Student remains eligible for, and interested in, special education services in the District. The fact that the Parents temporarily revoked their consent for the Student to receive special education services in the District does not change the fact that the Student is still eligible to receive special education services in the District. As the form signed by the Parents reflects, the Parents can change their mind at any time and again obtain a referral for special education services in the District. It is clear that the Student's Parents remain very much interested in the Student obtaining special education services in the District – as their actions in

16

this case and the lower proceedings demonstrate. The Parents temporarily revoked their consent for special education services as a "temporary fix" to the Student having to attend a new school while these proceedings continue.

"Given the nature of the pedagogical and legal disagreements which underlie this case" it presents a live controversy and the Court rejects the District's mootness argument. *Hudson, supra.*

V.  **Should The Court Dismiss Plaintiffs' Claims Under Title II and Section 504 For Failure To Exhaust Administrative Remedies?**

In its Reply Brief, the District also argues that Plaintiffs "cannot assert claims under Title II and Section 504 without first exhausting available administrative remedies." (D.E. No. 8 at Pg ID 352). In support of this argument, the District directs the Court to § 1415(l), not to any exhaustion requirements set forth in the Section 504 or Title III. (*Id.*) (relying on the "plain language of IDEA" in § 1415(l)).[3]

When a claim under Section 504 or Title II involves public education, the Court must consider 20 U.S.C. § 1415(l). *S.E. v. Grant Cnty. Bd. of Educ.*, 544 F.3d 633, 641 (6th Cir. 2008). Section 1415(l) provides:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C.A. § 12101 *et seq*.], title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 791 *et seq*.], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the

---

[3]Moreover, the case law appears to reflect that neither Title II nor Section 504 of the Rehabilitation Act contain an exhaustion prerequisite. *See Mitchell through Mitchell v. Community Mental Health of Central Michigan*, __ F. Supp.3d __, 2017 WL 1077894 at *7 (E.D. Mich., Judge Lawson March 22, 2017).

17

> same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(l). Subsection (f) governs initial impartial due process hearings and subsection (g) governs appeals to the State educational agency.

The Supreme Court issued its decision in *Fry* after the parties completed the briefing on the pending motion. In *Fry*, the Court explained that Section 1415(l) requires exhaustion of IDEA administrative procedures before bringing certain claims under the ADA or Rehabilitation Act:

> The first half of § 1415(l) (up until "except that") "reaffirm[s] the viability" of federal statutes like the ADA or Rehabilitation Act "as separate vehicles," no less integral than the IDEA, "for ensuring the rights of handicapped children." H.R.Rep. No. 99–296, p. 4 (1985); see *id.,* at 6. According to that opening phrase, the IDEA does not prevent a plaintiff from asserting claims under such laws even if, as in *Smith* itself, those claims allege the denial of an appropriate public education (much as an IDEA claim would). But the second half of § 1415(l) (from "except that" onward) imposes a limit on that "anything goes" regime, in the form of an exhaustion provision. According to that closing phrase, a plaintiff bringing suit under the ADA, the Rehabilitation Act, or similar laws must in certain circumstances—that is, when "seeking relief that is also available under" the IDEA—first exhaust the IDEA's administrative procedures.

*Fry,* 137 S.Ct. at 750. Here, there does not appear to be any dispute that the Parents have exhausted the IDEA's administrative procedures (ie., they went through the administrative process and, having lost, filed this federal action, as provided under the statute).

Accordingly, the District's claim that the District's claims under Title II and Section 504 should be dismissed for failure to exhaust under § 1415(l) is rejected by the Court.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Defendant's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

                                                    s/Sean F. Cox  
                                                    Sean F. Cox  
                                                    United States District Judge

Dated: June 15, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 15, 2017, by electronic and/or ordinary mail.

                                                  s/Jennifer McCoy  
                                                  Case Manager