UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A.A., by and through his Parents
and Next Friends, E.A. and M.A.,

    Plaintiffs,

v.                                              Civil Action No. 16-14214

Walled Lake Consolidated Schools,     Sean F. Cox
                                                     United States District Court Judge

    Defendant.
_____/

## OPINION & ORDER

Plaintiff A.A. ("the Student"), by and through his Parents and Next Friends, E.A. and M.A. ("the Parents") (collectively "Plaintiffs") filed this action against Defendant Walled Lake Consolidated Schools (the "District"). Plaintiffs are a young child with Down syndrome and his parents. After having litigated a dispute over the proper placement of the Student in the Defendant school district before an administrative law judge, Plaintiffs filed this action against the District under the Individuals with Disabilities Education Act, 20 U.S.C. § 1401 *et seq.* ("the IDEA").[1]

The following motions are currently pending before the Court: 1) Plaintiffs' Motion to Strike Third-Party Complaint; 2) the Michigan Department of Education ("MDE") and Terri

---

[1] The IDEA "offers federal funds to States in exchange for a commitment: to furnish a 'free appropriate public education' – more commonly known as a FAPE – to all children with certain physical or intellectual disabilities." *Fry v. Napoleon Cmty. Sch.*, 137 S.Ct. 743, 748, 197 L. Ed. 2d 46 (Feb. 22, 2017). "Under the IDEA, an 'individualized education program,' called an IEP for short, serves as the 'primary vehicle' for providing each child with the promised FAPE." *Id.*

1

Chapman's Motion to Strike Third-Party Complaint Or, in the Alternative, Dismiss it; 3) the District's Motion for Leave to File an Amended Third Party Complaint; and 4) the District's Motion to Realign the Student as a Third Party Plaintiff. The issues have been extensively briefed by the parties and the Court concludes that oral argument is not necessary. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan.

For the reasons that follow, the Court shall DENY the District's Motion to Realign A.A. As A Third Party Plaintiff. In addition, the Court shall STRIKE the District's purported Third-Party Complaint filed on June 22, 2017, and DENY the District's motion seeking leave to file its proposed Amended Third-Party Complaint because they do not actually assert a third-party claim against the MDE or Chapman. Rather, the District is merely asserting independent claims that arise out of the same set of facts.

Given the above rulings, the Court shall also DENY AS MOOT the MDE/Chapman's Motion for Protective Order and the District's Motion to Compel Discovery from the MDE/Chapman.

## BACKGROUND

**A.     Factual Background**

Plaintiffs live within the District's geographical boundaries. The Student is a young child with a disability. He has Down syndrome and Speech Apraxia.

In May of 2015, the District addressed the Student's placement and services for the 2015-2016 school year. The District's May 2015 IEP placed the Student in a classroom for cognitively impaired students at the District's Meadowbrook Elementary School (a "CI Classroom"). The Student's Parents disagreed with that IEP and wanted the Student to be placed

2

in a general education classroom at the District's Keith Elementary School (ie., the Parents want him "mainstreamed"[2]).

The District and the Parents then entered into a "trial placement agreement," under which the Student would be placed in a general education classroom at Keith. The Student then began the 2015-2016 school year in the general education classroom at Keith.

Sometime later, however, the District determined that the Student should be moved to the CI Classroom, despite the Parents' objections.

**The Parent's Complaint About Trial Placement Agreement To The MDE**

While the Student was still attending Keith, his Parents filed a state administrative complaint with the MDE, alleging that the District circumvented the IEP placement process by proposing a trial placement agreement, and proposing an arbitration agreement, instead of convening an IEP team meeting. (*See* D.E. No. 6-3 at Pg ID 162). By the time that complaint had been filed, the Student had been attending Keith for more than half of the school year, and was still there.

In a letter dated February 11, 2016, the MDE confirmed that it had received Plaintiffs' complaint against the District. That letter stated:

> The OSE has determined that the district must return the student to the educational status, program placement, and services as they existed at Keith Elementary School during the "trial placement" until the conclusion of the investigation of this state complaint. In the judgment of the department, not doing so would constitute a violation of the student's due process protections.

(D.E. No. 6-2 at Pg ID 158-59).

---

[2]"Mainstreaming" refers to placing a child with special needs into a classroom with their peers who have no disabilities. *Honig v. Doe*, 484 U.S. 305, 311 (1988).

As to the complaint filed by the Parents, the MDE ultimately concluded that the District's use of a trial placement agreement, under the circumstances it was used, was not in compliance with the IDEA and the District was directed to discontinue the practice. (*See* D.E. No. 6-3). But that did not resolve the dispute over where the Student would be placed.

**The District's Due Process Complaint Concerning The Student's Placement And The ALJ's Rulings On It**

On April 1, 2016, after the Parents had filed their complaint about the trial placement agreement, the District filed for a due process hearing, to resolve the dispute over the Student's placement.

Because the District believed that the MDE would not decide the matter impartially, the District requested a hearing before an administrative law judge. (*See* D.E. No. 58 at 2 & 6).

The District's due process complaint was forwarded to the Michigan Administrative Hearing System for hearing and was assigned to Administrative Law Judge Kandra Robbins. The only parties to that proceeding were Plaintiffs and the District.

On April 18, 2016 – near the end of the school year – the District filed a motion with the ALJ asking her to issue an order that would require the Student to "stay put" in the CI Classroom at Meadowbrook Elementary (the school the Student had not yet attended). In an order issued on May 13, 2016, the ALJ concluded that the "Stay-Put placement for Student should be the May 13, 2015 IEP," that had placed him in the CI Classroom at Meadowbrook. (D.E. No. 6-4 at Pg ID 176). But the ALJ did not order that, stating:

> However, in light of the fact that Student has never been in the Mod. CI classroom called for in the May 13, 2015 IEP and with only 23 school days remaining, Student's Stay-Put placement for the remainder of the 2015-2016 school year shall remain as set by OSE until further order of this Tribunal.

4

(*Id*.).

On September 2, 2016, the ALJ issued her "Decision And Order" wherein she noted that "the issue in this case is limited to the appropriate educational placement" for the Student. (D.E. No. 36-2 at Pg ID 1398). The ALJ agreed with the District that the "Student's placement should have been in the CI classroom" at Meadowbrook, as determined by the IEP Team in May 2015 (*Id.* at Pg ID 1403) and the May 2016 IEP and the July 2016 amendment. (*Id*. at Pg ID 1406). The ALJ also found that the "Student's stay-put placement during any further proceedings in this matter is the CI classroom as called for in the May 2016 IEP as amended in July 2016." (*Id*. at Pg ID 1407). The ALJ's fifty-six page decision also included the following paragraphs, within the "Discussion" section:

> Based on Student's significant behavioral and language needs, which clearly were not met during the 2015/2016 school year [while he was at Meadowbrook], I find that Student did not receive a FAPE in the general education classroom. Student's placement should have been in the CI classroom as determined by the IEP Team in May 2015. *The District was not permitted to place Student in the CI classroom upon his return to school in February because of an order by the MDE. Therefore, although Student was not given FAPE, the District is not liable for this error.*
>
> Although I find that Student did not receive a free appropriate public education during the 2015/2016 school year, I do not find that Student is entitled to any compensatory education. District and parents agreed to a temporary placement on a trial basis for the first marking period. Student was absent from school beginning in December for the school break through January as a result of illness, and did not return to school until February at which time, MDE ordered that the Student remain in the trial placement. Therefore, the District was prohibited from implementing the educational placement called for in the May 2015 IEP. Additionally, Dr. Lundblad testified that Student would not benefit from any educational time beyond the regular school day. [Tr. Vol. VIII,pgs, 1179-1180].

(D.E. No. 36-2 at Pg ID 1403) (emphasis added).

**The District's Due Process Complaint, Challenging Actions Of The MDE**

In addition to filing a complaint pertaining to the Student's placement, the District also filed a due process hearing request, wherein the District alleged that the MDE violated the District's procedural and substantive rights in several ways as to its dispute with Plaintiffs, including "[i]mproper and prejudicial communications between MDE and the Parents, the Parents' advocate and the Parents attorney before and during MDE's investigation." (*See* D.E. No. 36-2) (wherein the ALJ discusses the procedural errors alleged by the District.). The MDE was named as a party to that due process complaint.

The same ALJ that was handling the dispute over the Student's placement, Kandra Robbins, was assigned to that matter.

The ALJ granted the MDE's motion to dismiss that due process complaint, explaining that the tribunal lacked jurisdiction over those claims. The ALJ explained that a due process hearing is only "proper when the dispute is with respect to the identification, evaluation, or educational placement of a student or whether FAPE has been offered to a student. 20 USC 1415(b)(6)." (*Id*. at Pg ID 1416). Because the District's complaint about the MDE's alleged actions did not involve that, it was dismissed for lack of jurisdiction.

**B.     Procedural Background Of This Action**

On December 1, 2016, Plaintiffs filed this action against a single Defendant – the District. As the District has recognized in its filings, this action "is an appeal from an administrative decision in the District's favor concerning the Student's educational placement" under the IDEA. (D.E. No. 5 at Pg ID 43).[3] The Student's parents want him mainstreamed,

---

[3]Plaintiffs also bring claims under Title II of the ADA and Section 504 of the Rehabilitation Act, but the District acknowledges that those claims "are functionally equivalent to Plaintiffs' claims under the IDEA." (D.E. No. 36 at Pg ID 1195).

while the District wants him placed in a classroom with cognitively-impaired students.

Notably, Plaintiffs *are not seeking monetary damages*[4] in this action. What the Parents want is for this Court to reverse the ALJ's ruling that the District's IEP's for the Student (that had him placed in a "CI" classroom) provides a FAPE to him in the least restrictive environment. That is, Plaintiffs seek a declaration as to whether the Student's FAPE in the least restrictive environment is in a mainstream class at Keith Elementary[5] (as the Parents believe) or in the CI class at Meadowbrook Elementary (as the District believes). Plaintiffs also seek an injunction ordering the District to place the Student in the mainstream class at Keith. In short, "Plaintiff's Complaint asks this Court to reverse an administrative decision in the District's favor." (D.E. No. 5 at Pg ID 37).

The matter was recently before the Court on a Motion to Dismiss filed by the District, wherein the District asked the Court to: 1) dismiss the case as moot, because the Parents withdrew consent for the Student to receive special education services by the District; and 2) dismiss Plaintiffs' claims under Title II and Section 504 for failure to exhaust administrative remedies, pursuant to 20 U.S.C. § 1415(l) of the IDEA. The Court heard that motion on June 8, 2017.

Immediately after that hearing, the Court held a scheduling conference, mindful that the

---

[4]The District's Motion to Dismiss recognized that only equitable relief is available under the IDEA. (*See* D.E. No. 5 at Pg ID 44) (*see also Long v. Dawson Springs Indep. Sch. Dist.*, 197 F. App'x 427, 432 (6th Cir. 2006)).

[5]The Student's mother is a teacher at Keith Elementary. According to the District's Third Party Complaint, the Student had a twin brother, who was also eligible for special education services in the District and attended Keith at some point. The Parents and the District apparently had the same disagreement over his placement, but he passed away in January of 2016.

Student would be starting a new school year soon and attempting to expedite this matter.

This Court denied the District's Motion to Dismiss, in its entirety, in an Opinion & Order issued on June 15, 2017. (D.E. No. 21).

On June 12, 2017, this Court issued the Scheduling Order in this action, that provides: 1) that "any third-party complaint" must be filed by June 22, 2017; 2) that witnesses were to be named by October 22, 2017; 3) that discovery would close on November 27, 2017; 4) dispositive motions must be filed by January 22, 2018; and 5) any trial would take place in July/August of 2018.

On June 22, 2017, the District filed a Third Party Complaint, asserting the following federal claims against Third-Party Defendants the MDE and Chapman, who is the Director of MDE's Office of Special Education:

1) "Section 1983 Claim – Contracts Clause and IDEA" (Count I): wherein the District asks this Court to declare that MDE and Chapman "violated the Contracts Clause of the constitution of the United States and the IDEA and its implementing regulations by prohibiting or limiting the use of trial placement agreements to resolve special education disputes" and asks this Court to enjoin them from limiting or interfering with such placement agreements.

2) "Section 1983 – Due Process Clause and IDEA" (Count II): wherein the District asks this Court to declare that the MDE and Chapman "Violated the Due Process Clause of the Fourteenth Amendment of the constitution of the United States and the IDEA and its implementing regulations by preventing the District from educating Students 1 and 2 in their original IEP placements without due process" and asks the Court to enjoin them from "preventing the District from continuing to educate students according to their IEPs."

3) "Section 1985 – Conspiracy to Interfere with Civil Rights" (Count III): wherein the District alleges that MDE, Chapman, and the Parents conspired to deprive "Student 1" (the Student in this case) and the District of their constitutional rights and statutory rights as alleged in Counts II and III, and to prevent and hinder the District from protecting the

8

> constitutional and statutory rights of Student 1 and Student 2 (a student not involved in this case, who is the Student's deceased twin brother). This count seeks to hold MDE and Chapman liable for damages and injuries suffered by the District – and by Student 1 and Student 2. This Count also asks the Court to enjoin MDE/Chapman from hindering the District from protecting the rights of Student 1 and Student 2 (who is deceased).
>
> 4) "Illegal Retaliation" (Count IV), asserted under the Rehabilitation Act and the ADA, wherein the District asserts that MDE and Chapman retaliated against it for advocating for Student 1.

It also contains the following state-law claims: 5) "Violation of Contracts Clause of the Michigan Constitution" (Count V); 6) "Violation of Due Process Clause of Michigan Constitution" (Count VI); 7) "Violation of Michigan Special Education Law" (Count VII); 8) "Intentional Interference with Contractual Relations" (Count VIII); and 9) "Abuse of Process" (Count IX).

On July 11, 2017, Plaintiffs filed a "Motion to Strike Third-Party Complaint" wherein they assert that: 1) the purported third-party complaint is not authorized by the Federal Rules; and 2) if the Court disagrees for some reason, then the Third-Party Complaint should at least be severed because it would delay this litigation and time is of the essence to Plaintiffs who want a ruling on the Student's placement.

In response to the District's Third-Party Complaint, the MDE and Chapman filed a "Motion to Strike Third-Party Complaint Or, In The Alternative, Motion to Dismiss Third-Party Complaint Pursuant to Fed. R. Civ. P. 12(b)." In this motion, the MDE and Chapman assert that the purported third-party complaint is not a third-party complaint under the federal rules. They also contend that the claims against them should be dismissed for independent reasons.

In response to that motion, on August 31, 2017, the District filed a response to the

9

Motion to Strike or Dismiss filed by the MDE/Chapman that asserts that "any shortcomings in the Third Party Complaint" are addressed in its proposed Amended Third Party Complaint, along with a Motion for Leave to File a First Amended Third Party Complaint.

As drafted and submitted to the Court, the District's proposed First Amended Third-Party Complaint does not identify the Student as a third-party plaintiff. The District's[6] proposed First Amended Third-Party Complaint, that now includes Mr. Titus, Ms. van Leuwen, and Dr. Brown as third-party plaintiffs, contains the following counts:

1) "Section 1983 Claim – Contracts Clause and IDEA Asserted Against MDE and Ms. Chapman, in her Official Capacity and as an Individual" (Count I): wherein the District asks this Court to declare that MDE and Chapman "violated the Contracts Clause of the constitution of the United States and the IDEA and its implementing regulations by prohibiting or limiting the use of trial placement agreements to resolve special education disputes" and asks this Court to enjoin them from limiting or interfering with such placement agreements.

2) "Section 1983 – Due Process Clause and IDEA Against MDE and Ms. Chapman, in her Official Capacity and as an Individual" (Count II): wherein the District asks this Court to declare that the MDE and Chapman "Violated the Due Process Clause of the Fourteenth Amendment of the constitution of the United States and the IDEA and its implementing regulations by preventing the District, Mr. Titus, Ms. van Leuwen and Dr. Brown from educating Students 1 and 2 in their original IEP placements without due process" and asks the Court to enjoin them from "preventing the District, Mr. Titus, Ms van Leuwen and Dr. Brown from continuing to educate students according to their IEPs."

3) "Section 1985 – Conspiracy to Interfere with Civil Rights Against MDE and Mr. Chapman, in her official capacity and as an individual" (Count III): wherein the District alleges that MDE, Chapman, and the Parents conspired to "Deprive Parents the Student, the District, Mr. Titus, Ms. van Leuwen, and Dr. Brown" of their constitutional rights and statutory rights

---

[6]Although the proposed amended Third-Party Complaint names individuals employed by the District as third-party plaintiffs, for ease of reference, the Court will continue to refer to all parties associated with the District as "the District."

> as alleged in Counts II and III, and to prevent and hinder the District, Mr. Titus, Ms. van Leuwen and Dr. Brown from protecting the constitutional and statutory rights" of Student 1 and Student 2.
>
> 4) "Illegal Retaliation" (Count IV), asserted under the Rehabilitation Act and the ADA, wherein the District, Mr. Titus, Ms. van Leuwen and Dr. Brown assert that MDE and Chapman retaliated against them for advocating for Student 1 and Student 2.

On September 1, 2017, the District filed a "Motion to Realign A.A. [the Student] As A Third Party Plaintiff."

In addition, several discovery motions have been filed. On August 31, 2017, the MDE/Chapman filed a "Motion for Protective Order / Request for Stay of Discovery Pending Outcome of Rule 12(B)(6) Motion and/or Motion to Strike Third-Party Complaint." On September 14, 2017, the District filed a Motion to Compel Discovery from MDE/Chapman.

On October 10, 2017, this Court ordered that all discovery was stayed until this Court ruled on the Motions to Strike, the Motion to Align, and the motion seeking leave to file an amended third-party complaint.

## ANALYSIS

**I.   The Court Shall Deny The District's Motion To Realign The Student As A Third-Party Plaintiff.**

On September 1, 2017 – more than two full months after the deadline for filing any third-party complaint in this matter, the District filed a "Motion To Realign A.A. [The Student] As A Third Party Plaintiff." (D.E. No. 37). If granted, that would require the District to seek leave to file a Second Amended Third-Party Complaint in order to name the Student as a third-party plaintiff, which would further delay this case.

In any event, the District's motion asserts that the "only way the Student's right to FAPE

will be vindicated" is if the Court realigns the Student as a third-party plaintiff. The District takes the position that the Student's Parents are not acting in the child's bests interests. The District asserts that the Parents' position that the Student should be mainstreamed is but a "cover for their desire for have the Student educated at Keith" because his mother is employed there as a teacher. The District submits "with complete respect for the Parents' desire to do as they wish, the Parents are not interested in FAPE." (District's Reply Br. at 4). That is, the District suggests that the Parents really do not care about their son getting a FAPE at all, they just want him schooled where it is most convenient for them, and that is why they are pursuing this appeal. The District asserts that only it is truly interested in the Student getting a FAPE and the Student must therefore be realigned as a third party so that the District can be his voice.

The District has not directed the Court to any IDEA cases wherein such relief has been granted. In fact, the District has not directed the Court to any cases of any nature, wherein a minor child has been "realigned" by the Court so that another party can pursue claims on his behalf that his own Parents oppose.

Rather, to support its motion, the District notes that the Sixth Circuit employs the "primary purpose" test to determine if it should realign the parties. (District's Br. at 4). The District then asserts that the "primary purpose of this case is to determine whether the Student was provided FAPE and, *if not, who is to blame*:" the "District, as the Parents allege, or, MDE and Ms. Chapman, as the ALJ determined." (*Id*. at 5) (emphasis added).

In response, Plaintiffs assert that the District's motion is both "misplaced and offensive." (Pls.' Br. at 8). They argue that the Student's Parents have a fundamental right to advocate for their son to be educated in the least restrictive environment and that "right cannot be abridged or

displaced by the District's desire to recast this straightforward dispute as a conflict between the Student and the MDE." (*Id*.). They assert that the requested realignment would violate the Parents' fundamental rights to make decisions regarding the care, custody and control of their child. They assert that the District's motion "flies in the face of the established presumption 'that fit parents act in the best interests of their children.'" (*Id*. at 2). They further assert:

> Plaintiffs, acting in the best interest of A.A., made an informed decision not to bring any claims against the MDE for the simple reason that the MDE, unlike the District, does not support the segregation of A.A. As the masters of their Complaint, with the fundamental right to make decision concerning A.A.'s education, Plaintiffs' decision in this regard must be respected. Defendant's clear motive is to use A.A.'s educational interest as a legal vehicle to sort out its apparent feuds with the Michigan Department of Education ("MDE"). Plaintiffs have no place in that dispute.

(*Id*. at 3-4). Plaintiffs further assert that realignment would not be warranted under the primary purpose test in any event because here, the primary issue in this case is simply whether the Student should be placed in a general education classroom or placed in a CI classroom. (*Id*. at 4).

The MDE and Chapman also oppose the District's Motion to Realign, noting that it is an extraordinary request to ask this Court to "modify the parties to this case so as to have a minor student be with a party advocating a position the parents vigorously oppose." (Third-Party Defs.' Br. at 1). They assert that the District's motion "strains all bounds of reasonableness, and legal merit, for [the District] to make this unheard-of assertion." (*Id.*). They note that the Parents have an express right to appeal the ALJ's decision under the IDEA, and assert that the District cannot "switch the alignment of parties based on its own extra-ordinary notion of advocacy." (*Id*. at 4). Like the Plaintiffs, the MDE/Chapman note that the primary purpose of this action is simply the review of the ALJ's decision as to the proper placement for the Student.

13

(*Id*. at 6).

The MDE/Chapman also assert that the District continues to mischaracterize the administrative decisions, noting that it continues to argue that the ALJ "somehow 'concluded' that the Department 'interfered with and prevented' Walled Lake from providing FAPE to the Student," when in fact, the "ALJ repeatedly rejected Walled Lake's attempt to seek review of non-FAPE matters." (*Id*. at 7-8).

In sum, they assert that the District's request violates "undisputable fundamental rights," and "misapplies and stretches the boundaries of the purpose and principles of party realignment beyond all common sense." They further note that, as a practical matter, their request would also delay the resolution of this matter to the prejudice of the Student. (*Id*. at 9).

The Court agrees that the District's Motion to Realign is misplaced and without merit and shall deny it.

By advocating that their child be mainstreamed, the Parents are not taking an extreme or radical position. That the Parents disagree with the District does not mean they are not acting in the best interests of their child. Reasonable minds can disagree and the statute gives the Parents the express right to appeal the ALJ's decision on this issue.

Indeed, it is precisely because parents and school representatives disagree on these kinds of placements that "the IDEA establishes formal procedures for resolving disputes," and, as explained by the Supreme Court, "a parent unhappy with the outcome of the administrative process may seek judicial review by filing a civil action in state or federal court. See § 1415(i)(2)(A)." *Fry v. Napoleon Cmty. Sch*., 137 S. Ct. 743, 749, 197 L. Ed. 2d 46 (2017).

The District mischaracterizes the primary purpose of Plaintiffs' case in order to support

14

its request to realign the Student. The District asserts that the "primary purpose of this case is to determine whether the Student was provided FAPE and, *if not, who is to blame*:" the "District, as the Parents allege, or, MDE and Ms. Chapman, as the ALJ determined." (*Id*. at 5) (emphasis added). That is simply not the case.

As the District has recognized in its prior filings, the Plaintiffs' action is simply "an appeal from an administrative decision in the District's favor concerning the Student's educational placement" under the IDEA. (D.E. No. 5 at Pg ID 43). Just as the issue in the administrative action was limited to determining the appropriate educational placement for the Student, so too is the case brought by Plaintiffs.

To the extent that the District asserts that the Student's best interests as to his proper placement can only be vindicated if he is aligned with the District, that argument lacks merit. As Plaintiffs' case currently stands, Plaintiffs will advocate for the Court to reverse the ALJ's decision and rule that the Student can receive a FAPE in the general education classroom, while the District will advocate for the contrary view, that the ALJ's decision should be affirmed and the Student should be placed in the CI classroom. Thus, both sides of the dispute are already being zealously presented as the Plaintiffs' case currently stands. The Student does not need to be realigned in order for the District to advocate that his proper placement is in the CI classroom.[7]

---

[7]The District's Reply Brief appears to shed light on the true purpose behind its request to have the Student realigned – so that the District can pursue independent claims against the MDE/Chapman. (District's Reply at 7, asserting the "purpose of the proposed realignment is to ensure [the Student] will have a remedy against MDE and Ms. Chapman if the District prevails on the allegations in the proposed FATPC.").

This motion shall be denied.

**II.	The Court Shall Strike The District's Purported Third-Party Complaint, And Deny It Leave To File Its Requested Amended Version, Because They Are Not Actually Asserting A Third-Party Claim Against MDE/Chapman; Rather, The District Is Merely Asserting Independent Claims That Arise Out Of The Same Set Of Facts.**

Rule 14 of the Federal Rules of Civil Procedure governs third-party practice and provides, in pertinent part:

> (a) When a Defending Party May Bring in a Third Party.
>     (1) Timing of the Summons and Complaint. A defending party may, as third-party plaintiff, serve a summons and complaint on a *nonparty who is or may be liable to it for all or part of the claim against it.* But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

Fed. R. Civ. P. 14(a) (emphasis added). Rule 14 further provides that "[a]ny party may move to strike the third-party claim, to sever it, or to try it separately. Fed. R. Civ. P. 14(a)(4).

A district court's decision whether to permit a defendant to implead a third party is reviewed for abuse of discretion. *Gen. Elev. Co. v. Irvin*, 274 F.2d 175, 178 (6th Cir. 1960).

The Sixth Circuit's leading case on third-party complaints is *American Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800 (2008), wherein it explained:

> Third-party pleading is appropriate only where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third-party defendant to be impleaded. *A defendant attempting to transfer the liability asserted against him by the original plaintiff to the third-party defendant is therefore the essential criterion of a third-party claim.* Correlatively, a defendant's claim against a third-party defendant cannot simply be an independent or related claim, but must be based upon the original plaintiff's claim against the defendant. *See Stiber v. United States,* 60 F.R.D. 668, 670 (E.D. Pa. 1973) ("Under Rule 14, the liability of the third-party must be dependent on the outcome of the main claim."). *Rule 14(a) does not allow a third-party complaint to be founded on a defendant's independent cause of action against a third-party defendant, even though arising out of the same occurrence underlying plaintiff's claim, because a third-party complaint must be founded on a third party's actual*

16

> *or potential liability to the defendant for all or part of the plaintiff's claim against the defendant. United States v. Olavarrieta,* 812 F.2d 640, 643 (11th Cir. 1987).

*Id.* at 805 (emphasis added). The Sixth Circuit further explained that a "third-party complaint is in the nature of an indemnity or contribution claim." *Id.*

Here, both Plaintiffs and MDE/Chapman have filed motions asking this Court to strike the District's purported third-party complaint, and deny it leave to file an amended third-party complaint, because the District is not actually asserting any third-party claims against MDE/Chapman. The Court agrees with them.

The District's proposed third-party complaint against the MDE/Chapman includes four claims:

1) A §1983 claim (Count I) wherein the District asks this Court to declare that MDE and Chapman "violated the Contracts Clause of the constitution of the United States and the IDEA" by prohibiting or limiting the use of trial placement agreements to resolve special education disputes" and asks this Court to enjoin them from limiting or interfering with such placement agreements.

2) A § 1983 claim (Count II) wherein the District asks this Court to declare that the MDE and Chapman "Violated the Due Process Clause of the Fourteenth Amendment of the constitution of the United States and the IDEA" by preventing the District and its agents from educating two students in their original IEP placements without due process and asks the Court to enjoin them from taking such actions in the future.

3) A § 1985 conspiracy claim (Count III) wherein the District alleges that MDE, Chapman, and the Parents conspired to "Deprive Parents the Student, the District, Mr. Titus, Ms. van Leuwen, and Dr. Brown" of their constitutional rights and statutory rights as alleged in Counts II and III, and to prevent and hinder the District, Mr. Titus, Ms. van Leuwen and Dr. Brown from protecting the constitutional and statutory rights" of two students.

4) "Illegal Retaliation" (Count IV), asserted under the Rehabilitation Act and the ADA, wherein the District asserts that MDE and Chapman retaliated against it for advocating for two of its students and seeks a declaration and

17

injunction regarding such conduct, and punitive damages.

(District's proposed First Amended Third Party Complaint). It does not contain any claims that are in the nature of an indemnification or contribution claim. None of the proposed claims against the MDE/Chapman are derivative of Plaintiffs' appeal of the ALJ's placement ruling under the IDEA.

A "*defendant attempting to transfer the liability asserted against him by the original plaintiff to the third-party defendant*" is "*the essential criterion of a third-party claim*" and it is lacking here. None of the proposed claims against the MDE/Chapman would transfer liability from the District and to MDE/Chapman if Plaintiffs were to prevail on their appeal of the ALJ's decision. If Plaintiffs prevail on their appeal of the ALJ's ruling, then this Court will declare that the Student receives a FAPE in the least restrictive environment in the general education classroom and order the District to so place the Student in a new IEP. If Plaintiffs lose on their appeal of the ALJ's ruling, then this Court will simply affirm the ALJ's ruling that the Student's proper placement is the CI classroom.

But regardless of whether this Court affirms or reverses the ALJ's ruling as to the proper placement for the Student, it would be the District – not Chapman or the MDE – that would provide that education to the Student under the new IEP. The District's own papers reflect that, noting that Michigan's Revised School Code "requires the District to educate its pupils and take any other action necessary to accomplish that goal" under Mich. Comp. Laws § 380.11a(3)(a) and that "the RSC and MDE regulations require the District to provide eligible disabled students, like A.A., with a free appropriate public education (FAPE)" under Mich. Comp. Laws § 380.1751(1) "and R. 340.1701 , et seq." (D.E. No. 36 at Pg ID 1222). Thus, even if the District

were to prevail on its proposed claims against the MDE/Chapman, that would not transfer liability for Plaintiffs' IDEA claim to Chapman or the MDE.[8]

The claims that the District seeks to assert against MDE/Chapman, which are based on their alleged interference with the District's attempt to resolve the dispute with the Parents, are independent of the outcome of Plaintiffs' case – they do not depend on the success or failure of Plaintiff's appeal of the ALJ's ruling. Regardless of whether Plaintiffs win or lose on their appeal of the ALJ's order, the District could still prevail on their claims against the MDE and/or Chapman based on their alleged interference and improper conduct. "Rule 14(a) does not allow a third-party complaint to be founded on defendant's independent cause of action against a third-party defendant," even if it arises out of the same occurrence underlying the plaintiff's claim. *American Zurich Ins. Co.*, 512 F.3d at 805.

The Court shall grant the motions asking this Court to strike the District's existing Third-Party Complaint[9], and deny it leave to file its requested Amended Third-Party Complaint. Neither contain an actual third-party claim against the MDE/Chapman.[10]

---

[8]Neither Chapman nor the MDE were parties to the underlying due process claim that the ALJ ruled upon in the District's favor. Accordingly, even if Plaintiffs wanted to add them as Defendants in connection with the challenge to the ALJ's ruling (which they do not), no such dispute between Plaintiffs and the MDE/Chapman was exhausted.

[9]The District's existing Third-Party Complaint also contains several state-law claims, although the District has stated they will bring those in state court. Even if the Court were to find that the District stated an actual *federal* third-party claim against the MDE/Chapman, this Court would decline to exercise supplemental jurisdiction over those state-law claims in this action.

[10]Given the Court's ruling, the Court need not address the portion of the MDE/Chapman's Motion to Strike or Dismiss that alternatively challenges those claims on a variety of grounds.

19

## CONCLUSION & ORDER

For the reasons set forth above, the Court ORDERS that the District's Motion to Realign A.A. As A Third-Party Plaintiff (D.E. No. 37) is DENIED.

IT IS FURTHER ORDERED that the Court GRANTS the motions to strike filed by Plaintiffs and the MDE/Chapman (D.E. Nos. 25 & 30) to the extent that the Court STRIKES the District's purported Third-Party Complaint filed on June 22, 2017 (D.E. No. 23), and DENIES the District's motion seeking leave to file its proposed Amended Third-Party Complaint (D.E. No. 34).

Given those rulings, the Court DENIES AS MOOT the MDE/Chapman's Motion for Protective Order (D.E. No. 35) and the District's Motion to Compel Discovery from the MDE/Chapman (D.E. No. 39).

IT IS SO ORDERED.

                                      s/Sean F. Cox
                                      Sean F. Cox
                                      United States District Judge

Dated: October 31, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 31, 2017, by electronic and/or ordinary mail.

                                      s/Jennifer McCoy
                                      Case Manager